Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50421 | **DATE** | 11/6/2001 |
| **CASE TITLE** | Hempstead vs. Rockford Housing Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the RHA's motion to strike is denied and its motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | NOV - 7 2001 | |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| /SEC | courtroom deputy's initials | NOV - 7 2001 date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials |

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

FRANK HEMPSTEAD, )
)
      Plaintiff, ) No. 99 C 50421
)
v. )
)
ROCKFORD HOUSING AUTHORITY, )
)
      Defendant. )

DOCKETED
NOV - 7 2001

## MEMORANDUM OPINION AND ORDER

### I. Introduction

On December 22, 1999, plaintiff Frank Hempstead, a lead foreman employed at the Rockford Housing Authority ("RHA"), filed a complaint against the RHA, alleging it retaliated against him and discriminated against him because of his race, in violation of Title VII of the Civil Rights Act ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and discriminated against him because of an alleged disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. The court has jurisdiction over Hempstead's complaint pursuant to 42 U.S.C. §§ 2000e-5(f), 12117(a), and venue is proper in this district and division. See id. §§ 2000e-5(f)(3), 12117(a). Currently pending before the court is the RHA's motion for summary judgment, filed pursuant to Fed. R. Civ. P. 56, and a motion to strike certain paragraphs of Hempstead's affidavit.

### II. Facts

Hempstead (African-American), has worked at the RHA since 1977. (LR 56.1(a) ¶ 6) Since 1994 or 1995, he has held the position of lead foreman, the highest level non-exempt position

in the maintenance department.  (Id. ¶¶ 8-9)  Hempstead is also a member of the union representing employees at the RHA and has been its chairman since approximately 1991.  (Id. ¶ 11)  In his capacity as union chairman, Hempstead has filed numerous union grievances on behalf of himself and others.  (Id. ¶ 12)

In November 1997, Hempstead was the lead foreman in charge of several RHA properties, namely:  Blackhawk, Orton Keyes, and Jane Addams.  (Def. Exh. B, Hempstead dep., p. 29)  After approximately two years, he was transferred to the construction department, where he worked at any property the RHA owned, wherever he was needed.  (Id. pp. 28-29)  After a year in the construction department, Hempstead was transferred to a property called Concord Commons ("Concord"), for approximately nine months.  (Id. pp. 29, 34)  Thereafter, he was moved to the Blackhawk and Jane Addams properties and, at some point, Concord was readded to his area of responsibility.  (LR 56.1(a) ¶¶ 23-24)  While in the construction department, Hempstead supervised anywhere from three or four employees to about ten employees. (Def. Exh. B, Hempstead dep., p. 28)  At Concord, he supervised two employees.  (Id. p. 35)¹  While supervising Blackhawk, Jane

---

¹ In his affidavit filed in support of his response to the RHA's motion for summary judgment, Hempstead claims he supervised three to seven employees, plus seasonal employees, prior to his transfer.  (Hempstead Aff., ¶ 12)  He states that while at Concord, he supervised one employee.  (Id. ¶ 13)  This conflicts with Hempstead's deposition testimony and, therefore, the court will disregard paragraphs twelve and thirteen of the affidavit. See Amadio v. Ford Motor Co., 238 F.3d 919, 926 (7th Cir. 2001) (where deposition and affidavit are in conflict, the affidavit is disregarded unless plaintiff shows he was mistaken in the

2

Addams, and Concord, Hempstead supervised anywhere from eleven to thirteen employees, and sometimes possibly twenty employees, due to seasonal help. (Id. pp. 26, 37)

Hempstead's race discrimination and retaliation claims center on his transfer to Concord, which he contends is the "least desirable" RHA development. (LR 56.1(a) ¶ 28) His disability claim centers on a 25-pound lifting restriction.

### III. Analysis

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir. 2000), cert. denied, 121 S. Ct. 1603 (2001). A genuine issue of material fact exists only when a reasonable jury could find for the nonmoving party based on the record as a whole. Bekker, 229 F.3d at 669. The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000); EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 436 (7th Cir. 2000). A complete failure of proof concerning an essential element of a case necessarily renders all other facts immaterial. Ribando v. United Airlines, Inc., 200 F.3d

---

deposition, for which there is a plausible explanation).

3

507, 509 (7th Cir. 1999). Although the Seventh Circuit has stated it applies the summary judgment standard with "added rigor" in employment discrimination cases, use of the phrase does not connote a more stringent standard of review. Alexander v. Wisconsin Dep't of Health & Family Serv., 263 F.3d 673, 681 (7th Cir. 2001). Rather, the phrase merely stresses the fact that employment discrimination cases typically involve questions of intent and credibility, issues not appropriate to decide at the summary judgment stage. Id.

A plaintiff alleging race discrimination under Title VII can prove such discrimination by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using the indirect, McDonnell Douglas burden-shifting approach. Id. at 682. Likewise, a Title VII retaliation claim can be proven by offering direct evidence of retaliation or by proceeding under the McDonnell Douglas burden-shifting approach. Id. A plaintiff pursuing a claim under the ADA follows the same approach. See Pugh v. City of Attica, Ind., 259 F.3d 619, 625 (7th Cir. 2001). Here, Hempstead has not produced any direct evidence of discrimination or retaliation and, therefore, the court will analyze his claims under the indirect, McDonnell Douglas burden-shifting method. See Alexander, 263 F.3d at 682.

One of the elements Hempstead must initially establish for his Title VII race discrimination, Title VII retaliation, and ADA discrimination claims is that he suffered an adverse employment action. See Logan v. Kautex Textron N. Am., 259 F.3d 635, 639,

4

640 (7th Cir. 2001) (setting forth prima facie elements of Title VII race discrimination and retaliation claims, one of which is that the plaintiff suffered an adverse employment action); Pugh, 259 F.3d at 626 (setting forth prima facie elements of ADA claim, one of which is that the plaintiff suffered an adverse employment action).

The Seventh Circuit has repeatedly held that a lateral transfer without a loss in benefits does not constitute an adverse employment action. Stutler v. Illinois Dep't of Corr., 263 F.3d 698, 702 (7th Cir. 2001). It is undisputed that when Hempstead was transferred to Concord he did not suffer a loss in pay, benefits, or seniority, and his job title and duties remained unchanged. (LR 56.1(a) Pl. Resp. ¶¶ 18-19) Hempstead holds the highest level non-exempt position in the maintenance department (id. ¶ 8), and there is no evidence the transfer affected any promotional opportunities.

An ostensibly lateral transfer may be an adverse employment action in some situations if it is accompanied by a "'dramatic downward shift in skill level required to perform job responsibilities.'" Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 651 (7th Cir. 2001) (quoting Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994)). For example, the plaintiff's ostensibly lateral transfer in Hoffman-Dombrowski was found to be an adverse employment action. 254 F.3d at 651. The plaintiff was transferred from an assistant manager position at one off-track betting ("OTB") facility to the same position at

5

another facility. Id. at 649. Her title and compensation were unaffected by the transfer, but her responsibilities were greatly reduced. Id. According to the plaintiff, in her previous position, she prepared the budget and payroll and was responsible for staffing hundreds of clerks. Id. In her new position, she scheduled one part-time and four full-time clerks, and her biggest responsibility was emptying lottery machines three times a week. Id.

In contrast to Hoffman-Dombrowski, Hempstead has not shown that the transfer to Concord resulted in the same dramatic downward shift in responsibilities or job skills. Hempstead states he went from supervising between three and eleven (sometimes up to twenty) employees to supervising two employees. Terminating supervisory authority over other employees can constitute an adverse employment action, see Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1111 n.7 (7th Cir. 1998); Dahm, 60 F.3d at 258-59, but not automatically, see Place v. Abbott Labs., 215 F.3d 803, 810 (7th Cir. 2000) (plaintiff who was transferred from a job with supervisory responsibilities to one with none did not suffer a materially adverse employment action), cert. denied, 531 U.S. 1074 (2001). Beyond stating that the transfer resulted in a reduction in the number of employees he supervised, Hempstead has offered no other evidence to explain how his job responsibilities and skills were qualitatively or quantitatively adversely affected by the transfer. See Dahm, 60 F.3d at 257 (a qualitative reduction in skill level, as well as a

6

quantitative reduction, can constitute an adverse employment action). Moreover, the transfer to Concord was for approximately nine months. (Def. Exh. B, Hempstead dep., p. 29) Simply showing a reduction in the number of employees Hempstead supervised for a nine-month period is not enough to show the transfer materially altered the terms and conditions of his employment.

Hempstead also argues Concord was the most undesirable property of all the RHA's property because the police received numerous reports of criminal activity on the property. (LR 56.1(b) ¶ 66) However, Hempstead offers no evidence in support of his opinion. Conversely, the RHA has proferred crime statistics which show that at least one other property, Fairgrounds Valley, consistently ranked worse than Concord. Orton Keys, a property Hempstead had previously been in charge of, also ranked worse than Concord in 1998 and 1999.

Hempstead's ADA claim fails for the additional reason that he has not produced evidence showing he is disabled within the meaning of the ADA. The only evidence before the court is that Hempstead at some point in time had a 25-pound lifting restriction; such evidence, without more, is insufficient to establish he is substantially limited in one or more major life activities. See Contreras v. Suncast Corp., 237 F.3d 756, 763 (7th Cir.), cert. denied, 69 U.S.L.W. 3792 (U.S. Oct. 1, 2001) (No. 00-1877).

7

Hempstead argues the RHA regarded him as being disabled because his supervisors, Joe Fiorenza and Chuck Doyle, knew of his lift restriction and told other RHA employees about it. (LR 56.1(b) ¶¶ 60, 62) The ADA defines "disability" to include, inter alia, being regarded as having a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(C); Moore v. J.B. Hunt Transp., Inc., 221 F.3d 944, 950 (7th Cir. 2000). To fall within the language of section 12102(2)(C), it is not enough for Hempstead to simply show the RHA was aware of his limitation. See Moore, 221 F.3d at 954. Rather, he must show the RHA knew of the impairment and believed he was substantially limited because of it. See id. Hempstead has not produced any evidence showing the RHA believed he was substantially limited because of any impairment. On the contrary, the fact that the RHA asked Hempstead to clean an air conditioner (LR 56.1(b) ¶ 63), tends to show they did not regard him as having an impairment.

The RHA has moved to strike paragraphs six, seven, and eight of an affidavit Hempstead filed in support of his response to the RHA's motion for summary judgment. These paragraphs were irrelevant to the court's analysis as to whether Hempstead suffered an adverse employment action, or whether he was regarded as being disabled. Therefore, the RHA's motion to strike is denied as moot.

## IV. Conclusion

For the reasons stated above, the RHA's motion to strike is denied and its motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

ENTER:

PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: November 6, 2001